IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE STANDARD REGISTER COMPANY, AND WORKFLOWONE LLC, | ) ) ) | CIVIL NO. 14-00291 JMS-RLP |
| | ) | ORDER DENYING PLAINTIFFS' |
| | ) | MOTION FOR A TEMPORARY |
| Plaintiffs, | ) | RESTRAINING ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| LYNDEN KEALA, JAXCINE KAULILI-GUZON, SHARON BROWN-HENRY, AND AMERICAN BUSINESS FORMS, INC. dba AMERICAN SOLUTIONS FOR BUSINESS, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

On June 25, 2014, Plaintiffs the Standard Register Company and

WorkflowOne LLC (collectively "WorkflowOne" or "Plaintiffs")[1] filed this action

against former employees Lynden Keala ("Keala"), Jaxcine Kaulili-Guzon

---

[1] This action was originally filed naming as Plaintiffs the Standard Register Company, Relizon Company, and Workflow Solutions LLC. On July 9, 2014, Plaintiffs filed an Amended Complaint correcting pleading deficiencies regarding citizenship of the parties and naming the current Plaintiffs. Doc. No. 32. The Amended Complaint reflects that WorfklowOne LLC purchased the assets of Relizon Company and Workflow Solutions LLC, which had both declared bankruptcy.

("Kaulili-Guzon"), and Sharon Brown-Henry ("Brown-Henry") (collectively, the "Individual Defendants"), as well as their current employer American Business Forms, Inc. dba American Solutions for Business ("ASB"), (collectively, together, "Defendants"). WorkflowOne alleges that the Individual Defendants violated their employment agreements with WorkflowOne or its predecessor when they went to work for ASB and solicited WorkflowOne's clients and/or disclosed WorkflowOne's trade secrets. Plaintiffs assert claims against the Individual Defendants for breach of contract, and claims against all Defendants for misappropriation of trade secrets and tortious interference with business relations.

Currently before the court is WorkflowOne's Motion for Temporary Restraining Order ("Motion for TRO"), requesting that the court enter an order prohibiting Defendants from (1) breaching the non-solicitation and non-disclosure provisions of the Individual Defendants' agreements with WorkflowOne; (2) misappropriating, disclosing, or otherwise using WorkflowOne's trade secrets; and (3) tortiously interfering with WorkflowOne's valid business relationships and contracts. A status conference was held on July 1, 2014. Plaintiff submitted a supplemental brief on July 3, 2014, Doc. No. 19, Defendants submitted Oppositions on July 7, 2014, Doc. Nos. 24, 28, and Plaintiffs submitted a Reply on July 9, 2014. Doc. No. 38. A hearing was held on July 11, 2014. Based on the

parties' briefing, the arguments made, and the entire record before the court, the court DENIES the Motion for TRO.

## II. FACTUAL BACKGROUND

### A.    The Individual Defendants' Employment With Plaintiffs

WorkflowOne is in the business of providing print, print-related, and promotional marketing solutions, including print and promotional marketing and distribution of promotional products.  Doc. No. 2-2, Byron Riddle Decl. ¶ 3.

Each of the Individual Defendants was employed by WorkflowOne, with Keala and Brown-Henry employed as Sales Representatives, and Kaulili-Guzon employed as a Customer Service Representative.  *Id.* ¶¶ 6-7.  Keala first started worked for Relizon in the 1980s-1990s, left in 2000, and returned in 2005.  Doc. No. 28-1, Keala Decl. ¶ 1.  Kaulili-Guzon started working for WorkflowOne in August 2010, Doc. No. 28-2, Kaulili-Guzon Decl. ¶ 1, and Brown-Henry has worked for WorkflowOne and/or its related entities for many years.  Doc. No. 28-3, Brown-Henry Decl. ¶ 1.

Each of the Individual Defendants signed Agreements with WorkflowOne and/or its related entities in which they agreed (1) not to disclose the confidential trade secrets of WorkflowOne; and (2) for a period of twelve months after their last day of employment with WorkflowOne, not solicit business

competitive to WorkflowOne from any customers whom they solicited or accepted business during the final twelve months of their employment with WorkflowOne. *See* Doc. Nos. 2-3 - 2-5, Pls.' Exs. A-C. Kaulili-Guzon's and Brown-Henry's agreements include the further restriction that they not only refrain from soliciting, but also refrain from accepting, business from WorkflowOne customers. *See* Doc. Nos. 2-4 - 2-5, Pls.' Exs. B-C.

Keala signed his agreement on January 10, 2005, Doc. No. 2-3, Pls.' Ex. A, and Kaulili-Guzon and Brown-Henry both signed their agreements after they had been working for a period of time at WorkflowOne. *See* Doc. Nos. 2-4 - 2-5, Pls.' Exs. B-C.

## B.      WorkflowOne's Alleged Trade Secrets

WorkflowOne asserts that it has made great efforts to develop customer goodwill, and has expended significant resources to train and develop its employees in business strategies and sales techniques to provide quality products and foster customer goodwill and loyalty. Doc. No. 2-2, Riddle Decl. ¶¶ 4-5. WorkflowOne further asserts that it has taken proactive steps to maintain the secrecy of its customer lists and pricing information, and that this information is not generally known to the public. *Id.* ¶ 5. According to WorkflowOne, the Individual Defendants' positions gave them direct and significant access to

confidential information and proprietary trade secrets critical to the success of WorkflowOne's business, including customer lists, pricing information, and other confidential information related to company operations and financing. *Id.* ¶¶ 8-9. Indeed, Keala's agreement states that Keala acknowledges that his employer's trade secrets include, among other things, the names and contact information of its customers, as well as sales, marketing, and product development plans, price lists, market forecasts, and sales volumes. Doc. No. 2-3, Pls.' Ex. A. Brown-Henry and Kaulili-Guzon's agreements similarly recognize that confidential and/or proprietary information includes "any information shared with the Employee by WorkflowOne's management, regarding WorkflowOne's operations, business, employees, strategies, finances and/or customers, whether or not developed by Employee . . . ." Doc. No. 2-4 - 2-5, Pls.' Exs. A-B.

In contrast to WorkflowOne's assertions, Keala and Brown-Henry assert that (1) nothing was secret about their work at WorkflowOne; (2) they were never told that information regarding their customers, sales, or products needed to be kept confidential; (3) there were no special or secret sales methods at WorkflowOne; (4) although WorkflowOne provided some sales training, it was of no value to them and they did not use it in their work; and (5) prices and products were not secret. Doc. No. 28-1, Keala Decl. ¶¶ 10-11; Doc. No. 28-3, Brown-

Henry Decl. ¶¶ 6-8.

## C. The Individual Defendants' Subsequent Employment at ASB

Brown-Henry left her employment with WorkflowOne on January 27, 2014, Doc. No. 2-2, Riddle Decl. ¶ 15, and Kaulili-Guzon and Keala left on February 1, 2014. *Id.* ¶ 16. Each of these employees were subsequently hired by ASB which, similar to WorkflowOne, distributes print, promotional products, office supplies, eCommerce, and marketing solutions. *See* Doc. No. 24-1, Kathryn Hallstrom Decl. ¶ 2. ASB hired the Individual Defendants for its Honolulu office, which it had opened earlier in 2014. *Id.* In particular, ASB hired (1) Kaulili-Guzon as Office Manager and Director of Customer Service, Hawaii, effective February 3, 2014, (2) Keala as Sales Associate, Hawaii, effective February 11, 2014, and (3) Brown-Henry as Sales Associate, Hawaii, effective April 21, 2014. Doc. No. 24-1, Kathryn Hallstrom Decl. ¶¶ 5-7.

According to Plaintiffs, the Individual Defendants have been soliciting Plaintiffs' customers on behalf of ASB in violation of the provisions in their employment agreements that they not solicit WorkflowOne customers whom they solicited and/or accepted business on behalf of WorkflowOne during the final twelve months of their employment with WorkflowOne. Doc. No. 2-2, Riddle Decl. ¶ 18. As to particular customers, WorkflowOne asserts that:

- Keala solicited and accepted business from Blood Bank of Hawaii, as shown by a March 12, 2014 email from Marc Cooper, Supply Specialist for the Blood Bank of Hawaii, stating that Cooper would like to vet ASB for future business and that ASB's sales representative is Keala, *id.* at Ex. 1;

- "we have obtained evidence" from an Old Republic Title & Escrow employee that Keala and Kaulili-Guzon solicited and/or accepted its business, as shown by a June 18, 2014 email inquiring whether WorkflowOne can match prices on certain office supplies, *id.* at Ex. 2;

- WorkflowOne has "obtained evidence" and/or "has evidence" (whether from un-named customer employees or some other unidentified source), that the Individual Defendants solicited and/or accepted business from Title Guarantee, BEI, Maui Divers, and Oceanic, *id.* ¶¶ 21, 22, 24, 25; and

- WorkflowOne has lost other customers, including Outrigger, Gentry Homes, and Golf Concepts, which "upon information and belief" the Individual Defendants solicited in violation of their agreements. *Id.* ¶ 26.

In contrast to Plaintiffs' assertions, Keala asserts that he never solicited his WorkflowOne customers after he began working for ASB, and that the customers instead called him. Doc. No. 28-1, Keala Decl. ¶ 19. According to Keala, after Kaulili-Guzon left WorkflowOne, WorkflowOne moved customer

service for Hawaii customers to the mainland, and WorkflowOne customers subsequently complained to Keala that their WorkflowOne customer service representative was not responsive.  *Id.* ¶ 15.  Contacting the Individual Defendants was not difficult -- WorkflowOne required Keala and Brown-Henry to use their personal cell phones for their work.  *Id.* ¶ 12; Doc. No. 28-1, Brown-Henry Decl. ¶ 3.  Like Keala, Brown-Henry asserts that "I never solicited my customers from WorkflowOne after I began working for [ASB].  Customers always called me first."  Doc. No. 28-3, Brown-Henry Decl. ¶ 10.

Kaulili-Guzon similarly asserts that she did not solicit any customers from WorkflowOne after she began working for ASB; indeed, her duties at WorkflowOne involved clerical work as a customer sales representative and she was not trained in sales.  Doc. No. 28-2, Kaulili-Guzon Decl. ¶¶ 1, 4.  At ASB, she similarly provides customer service, has no customer or account responsibilities, and customers do not place orders with her.  Doc. No. 28-2, Kaulili-Guzon Decl. ¶¶ 7, 8.

### III.  <u>STANDARD OF REVIEW</u>

A TRO may issue only if the plaintiff meets its burden under well-established factors.  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See, e.g.*, *Hawaii v.*

*Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A "preliminary injunction is an extraordinary [and drastic] remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasizes that a plaintiff seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

# IV. <u>DISCUSSION</u>

To prevail on a Motion for TRO, *Winter* requires that Plaintiffs establish all four elements -- likelihood of success, likelihood of irreparable harm, a favorable balance of equities, and that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Based on the following, the court finds that Plaintiffs have not demonstrated that they are likely to succeed on the merits of any of their claims. Because Plaintiffs necessarily cannot obtain a TRO, the court does not address the other elements necessary for a TRO. The court addresses each of Plaintiffs' claims in turn.[2]

## A.    Breach of Contract

Plaintiffs have failed to establish that they are likely to succeed in establishing the elements of their breach of contract claim.

First, Defendants have raised a significant issue as to whether Kaulili-Guzon's and Brown-Henry's contracts are unenforceable for lack of consideration. *See Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 534, 135 P.3d 129, 143 (2006) ("It is well-settled that consideration is an essential element of, and is necessary to

---

[2] Below, the court address only those issues necessary to find that Plaintiffs have not established a likelihood of success on the merits. Although the parties raise additional issues, the court need not address them at this time.

the enforceability or validity of, a contract." (quotations omitted)).[3] In particular,

Kaulili-Guzon and Brown-Henry signed these agreements after they had already

been working for Plaintiffs for some time,[4] and numerous courts have held that

where an employee has already been hired, continued at-will employment, standing

alone, is insufficient consideration for a non-competition agreement.[5] And

---

[3] Although each agreement includes a provision stating that Ohio law applies, the parties agree that Hawaii law applies given the parties' contacts in Hawaii and Hawaii's interest in the issues raised. For purposes of this Motion only, the court applies Hawaii law, without prejudice to fuller briefing by the parties and/or the court raising this issue sua sponte.

[4] At the July 11, 2014 hearing, counsel for the Individual Defendants argued that Keala may have signed his agreement after he had already been working for some time with Plaintiffs. At least based on the evidence in the record, it appears that Keala resumed working for Plaintiffs in January 2005, Doc. No. 28-1, Keala Decl. ¶ 1, and signed his agreement on January 10, 2005. *See* Doc. No. 2-3, Pls.' Ex. A. As a result, the court addresses this issue as to Brown-Henry and Kaulili-Guzon only, without prejudice for the parties to present additional evidence regarding Keala.

[5] *See, e.g.*, *See Menzies Aviation (USA), Inc. v. Wilcox*, 978 F. Supp. 2d 983, 998 (D. Minn. 2013) (finding that "continued employment alone is insufficient consideration . . . to support enforcement of a non-compete agreement against an already employed employee"); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 775 (N.D. Tex. 2012) (finding that new consideration is required to enforce a non-compete covenant on an existing employee); *Access Organics, Inc. v. Hernandez*, 175 P.3d 899, 903 (Mont. 2008) (determining that "afterthought agreements," *i.e.*, non-compete agreements signed by employees after the date of hire, require independent consideration); *Labriola v. Pollard Grp.*, 100 P.3d 791, 794 (Wash. 2004) (en banc) ("A noncompete agreement entered into after employment will be enforced if it is supported by independent consideration. . . . Independent, additional, consideration is required for the valid formation of a modification or subsequent agreement. There is no consideration when one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract." (internal quotations and citations omitted)); *Cf. PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1223 (M.D. Fla. 2012) (concluding that a non-compete clause entered after employment is enforceable because promotion of employee is adequate consideration); *But see Open Magnetic Imaging, Inc. v. Nieves-Garcia*, 826 So. 2d 415, 417 (Fla. Dist. Ct. App. 2002) (citing cases that Florida courts have enforced non-compete agreements after commencement of employment); *Corson v. Universal Door Sys., Inc.*, 596 So.

(continued...)

contrary to Plaintiff's argument, *see* Doc. No. 38, Pls.' Reply at 12, the Hawaii

Supreme Court has not addressed this precise issue --*Technicolor, Inc. v. Traeger*,

57 Haw. 113, 120, 551 P.2d 163, 169 (1976), determined that where an employee

signed a non-compete agreement upon his promotion, his employment was

adequate consideration, especially where he was "paid a salary substantially above

what his other employers were willing to pay him for filling similar positions but

without such a postemployment restriction."  In comparison, the parties have not

presented any facts regarding the benefit Brown-Henry and Kaulili-Guzon received

in exchange for signing these agreements, and whether, under Hawaii law, such

benefit is adequate consideration.

      Second, Plaintiffs have failed to show a likelihood that the Individual

Defendants breached their non-competition agreements.  Although Plaintiffs assert

that they have presented "overwhelming evidence" that the Individual Defendants

breached their agreements, *see* Doc. No. 2, Pls.' Mot. at 15, much of the purported

"evidence" are the conclusory assertions of Byron Riddle, Regional Vice-President

for WorkflowOne, that Plaintiffs "have evidence" of breaches from various third-

party companies.  In other words, Riddle largely says "trust me," the Individual

---

[5](...continued)
2d 565, 568 (Ala. 1991) (similar).

Defendant have breached their agreements. But for the most part, Riddle fails to describe this evidence in any manner, and his "evidence" could be anything -- a phone call from a customer stating that it is taking its business elsewhere, a letter stating that one of the Individual Defendants solicited its business, or simply Riddle's gut feeling that the Individual Defendants must have breached their agreements because WorkflowOne is losing business.[6] Without any details regarding the substance of Plaintiffs' "evidence," the court is at a loss as to whether Plaintiffs can in fact establish that the Individual Defendants have breached any provisions in the agreements.

And even where Riddle describes his "evidence" in slightly more detail -- *e.g.*, Doc. No. 2-2, Riddle Decl. ¶ 22 (stating that a BEI employee verified that Keala and Kaulili-Guzon solicited its business) -- Riddle again fails to provide details establishing the likelihood of a beach. In particular, the court may rely on hearsay in ruling on the Motion, but what weight to give such evidence is in the court's discretion. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept

_____

[6] To the extent Riddle bases his assertions on the mere fact that WorkflowOne has lost customers since the Individual Defendants left, it appears that the Individual Defendants' departure from WorkflowOne was one of *several* changes at WorkflowOne that affected customer service and loss of customers (the others being moving customer service to the mainland, and Riddle's focus on the bottom line rather than customer service, *see* Doc. No. 28-1, Keala Decl. ¶¶ 2-7).

. . . hearsay for purposes of deciding whether to issue the preliminary injunction.");

*see also Herb Reed Enters. v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5

(9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a

point when there has been limited factual development, the rules of evidence do

not apply strictly to preliminary injunction proceedings.").  The court gives little

weight to Riddle's assertions that he has "evidence" from particular customers

where he fails to describe the name of the customer's representative, what the

customer's representative said, and to whom such information was relayed at

WorkflowOne.

And where Riddle's Declaration does not provide a factual predicate,

these facts do not support his conclusions.  For example, Riddle asserts that an

email from Blood Bank Hawaii seeking to vet ASB as a vendor establishes that

Keala solicited this WorkflowOne customer.  *See* Doc. No. 2-2, Riddle Decl.

¶¶ 19-20.  Not so -- the email establishes only that Blood Bank Hawaii was

interested in using ASB and that Keala is ASB's customer representative; it does

not establish that Keala contacted Blood Bank of Hawaii to become a ASB

customer.  This distinction as to Keala is important -- his agreement prohibits him

from "call[ing] upon or solicit[ing] business" from WorkflowOne customers, and

states nothing about his accepting business that contact him.  *See* Doc. No. 2-3,

Pls.' Ex. A. As Keala explains, any WorkflowOne customers contacted him, not the other way around. Doc. No. 28-1, Keala Decl. ¶ 19.

As another example, Riddle asserts that "[w]e have obtained evidence from an Old Republic employee that since leaving their employment with WorkflowOne, they have both solicited business" from that customer. Doc. No. 2-2, Riddle Decl. ¶ 23. The only specific evidence presented, however, is an email from Old Republic to WorkflowOne asking whether WorkflowOne can match prices on certain products. *Id.* Ex. 2. The email does not mention ASB, much less the Individual Defendants, and without more, it would take several inferential leaps to accept Riddle's interpretation that this email shows that "Kaulili-Guzon and Keala have apparently undercut WorkflowOne's prices." *Id.* ¶ 23.

In short, Plaintiffs' conclusory assertions of breach are insufficient to establish a likelihood of success on the breach of contract claim. Indeed, nowhere do Plaintiffs provide, for each WorkflowOne customer, (1) when the Individual Defendants last had contact with the customer as a WorkflowOne employee, and the scope of such contact (Riddle largely asserts that the Individual Defendants "solicited or accepted" business from customers as WorkflowOne employees, without explaining the nature of such contact); or (2) the substance of the alleged

breach, *i.e.*, whether based on solicitation, acceptance of business, or both.[7]

Without such details, Plaintiffs leave the court with nothing more than speculation

as to whether the Individual Defendants breached their agreements.

Finally, in their Reply and at the July 11, 2014 hearing, Plaintiffs

argue that all the agreements prohibit the Individual Defendants from "soliciting"

WorkflowOne customers -- meaning that the Individual Defendants cannot conduct

business with WorkflowOne customers, regardless of who initiates the contact --

and that the Individual Defendants admit in their Declarations that they accepted

business from WorkflowOne customers in violation of their agreements.  *See* Doc.

No. 38, Pls.' Reply at 10.  Plaintiffs offer no legal support for their broad definition

of "solicit," and the court declines to accept it at this time and on the record

presented.  In particular, it appears that several courts have rejected in the

employment context the broad interpretation proposed by Plaintiffs,[8] and Plaintiffs

---

[7] Highlighting that such facts are necessary is that it appears that Kaulili-Guzon was not involved in sales in *either* company, making Plaintiffs' generalized assertions that she solicited and/or accepted business for either company tenuous at best.

[8] *See, e.g.*, *Hair Club for Men, LLC v. Elite Solutions Hair Alternatives, Inc.*, 2007 WL 1080588 at *2 (E.D. Cal. Apr. 05, 2007) ("Merely informing customers of one's former employer of a change of employment, without more, is not solicitation.  Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." (quoting *Hilb, Rogal & Hamilton Ins. Servs. v. Robb*, 39 Cal. Rptr. 2d 887 (1995)); *Alpha Tax Servs., Inc. v. Stuart*, 761 P.2d 1073, 1075-76 (Ariz. Ct. App. 1988) (same); *Paulson, Inc. v. Bromar, Inc.*, 808 F. Supp. 736, 741 (D. Haw. 1992) (discussing *Aetna Bldg. Maint. Co. v. West*, 246 P.2d 11, 15 (Cal. 1952), which held that mere acceptance of an offer of business was not solicitation because a a contrary holding would restrict competition and the

(continued...)

chose to use more specific language in later agreements (prohibiting an employee from "soliciti[ing] or accept[ing] business"). On the limited briefing and argument presented, the court rejects Plaintiff's argument.[9]

For these reasons, Plaintiffs have failed to establish a likelihood of success on their breach of contract claim. The court's determination that Plaintiffs have failed to carry their burden on the Motion for TRO does not mean that a breach did not occur. Rather, Plaintiffs may very well, with additional and more particular evidence, establish a breach. But on the record presented, Plaintiffs have simply not carried their burden at this time.

## B.    Misappropriation of Trade Secrets

Plaintiffs have also failed to establish a likelihood of success on their trade secret misappropriation claim.

---

[8](...continued)
right to change employers); *Akron Pest Control v. Radar Exterminating Co.*, 455 S.E.2d 601, 602 (Ga. App. 1995) (rejecting that a party bound by a nonsolicitation agreement should "refuse and, in fact, turn away pest control business if contacted by any customers," and determining that an agreement "not to solicit, either directly or indirectly, any current or past customers" requires more than "[m]erely accepting business" to constitute a breach); *see also Meyer-Chatfield v. Century Bus. Servicing, Inc.*, 732 F. Supp. 2d 514, 522 (E.D. Pa. 2010) ("Under the definition in Black's Law Dictionary, solicitation is not confined only to the verbal act of asking or requesting something, or to the act of formally first approaching a potential employee. Actions to 'awake or incite to action,' or 'conduct intended to and calculated to incite' the desired act are also acts of solicitation.").

[9]  And in any event, even if the court applied a broad interpretation of "solicit," there is no evidence presented as to the identity of the Individual Defendants' customers as WorkflowOne employees during the last twelve months of their employment.

Hawaii has adopted the Uniform Trade Secrets Act, *see* Hawaii

Revised Statutes ("HRS") Ch. 482B, which defines a "trade secret" as:

> information, including a formula, pattern, compilation,
> program device, method, technique, or process that:
> > (1) Derives independent economic value, actual or
> > potential, from not being generally known to, and
> > not being readily ascertainable by proper means
> > by, other persons who can obtain economic value
> > from its disclosure or use; and
> > (2) Is the subject of efforts that are reasonable
> > under the circumstances to maintain its secrecy.

HRS § 482B-2.

Plaintiffs assert in summary fashion that the Individual Defendants

had direct access to its trade secrets, which include customer lists and information

regarding products and pricing. *See* Doc. No. 2-1, Pls.' Mot. at 20. Although this

information may in fact qualify as trade secrets (and the Individual Defendants'

agreements acknowledge that this information qualifies as such), Plaintiffs have

provided scant evidence that this is actually the case. Rather, Plaintiffs (again) rely

on the vague and conclusory assertion of Riddle that "WorkflowOne has . . . taken

proactive steps to maintain the secrecy of its customer lists and pricing information

and this information is not generally known to the public." Doc. No. 2-2, Riddle

Decl. ¶ 5. Plaintiffs never describe, however, (1) the actual substance of the trade

secrets beyond generalized categories of customer, product, and pricing

information; or (2) what steps Plaintiffs took, beyond having the Individual

Defendants sign their agreements, to keep this information secret. Given that

customers are privy to sales methods and pricing, and customer lists are not trade

secrets if publicly available,[10] the court cannot discern what it is that Plaintiffs

assert are trade secrets and whether such information was the subject of efforts that

are reasonable under the circumstances to maintain its secrecy.

Further, Defendants have submitted evidence calling into question

whether Plaintiffs' customer, product, and pricing information (as generally

described by Riddle) constitutes trade secrets. For instance, Keala asserts that he

was never told that anything about his customers, sales, or products needed to be

kept confidential, there were no special or secret sales methods, and prices were

necessarily relayed to customers. Doc. No. 28-1, Keala Decl. ¶ 10. Like Keala,

---

[10] *See, e.g.*, *Wyndham Resort Dev. Corp. v. Bingham*, 2010 WL 2740158, at *5 (E.D. Cal. July 9, 2010) ("[C]ourts are reluctant to protect customer lists to the extent they embody information which is "readily available" through public sources, such as business directories. On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market." (quotations and citations omitted)); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 1028254, at *5 (N.D. Cal. Mar. 18, 2010) (distinguishing between "publicized or 'readily ascertainable'" customer lists and product and pricing information which do not constitute trade secrets, and more detailed information such as "specific contacts for customers, past communications and agreements between Teledex and customers or vendors, as well as any strategic plans that Teledex developed for its future relationships" which were kept confidential); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 255 (S.D.N.Y. 2009) (holding that marketing strategies are not trade secrets where the plaintiff "failed to explain what particular information about the particular . . . marketing techniques used here . . . are not already public [and] are not already commonly known in the industry").

Brown-Henry asserts that there was nothing secret about her work, she was never told that she was supposed to keep certain information confidential, and her prices were not secret because customers knew what they were paying and she set her own prices for the products. Doc. No. 28-3, Brown-Henry Decl. ¶¶ 6-7. It also appears that Plaintiffs may not have taken reasonable steps to safeguard information they assert is confidential -- Keala asserts that he was provided a list of Brown-Henry's accounts when she left, and that Riddle failed to make any effort to retrieve that list from Keala when he resigned, despite Keala's repeated calls. Doc. No. 28-1, Keala Decl. ¶ 16.

Given the totality of the evidence presented, at this time the court cannot discern precisely what Plaintiffs contend are the trade secrets that Defendants allegedly misappropriated. As a result, the court finds that Plaintiffs have failed to establish a likelihood of success on their trade secret misappropriation claim. Again, the court's determination that Plaintiffs have failed to carry their burden on the Motion for TRO does not mean that Defendants did not misappropriate trade secrets. Rather, Plaintiffs have simply not carried their burden on the record presented.

///

///

## C.     Tortious Interference with Business Relations

Finally, Plaintiffs have failed to establish a likelihood of success on their claim for tortious interference with business relationships.  To prevail on this claim, Plaintiffs must establish:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 116, 148 P.3d 1179, 1218 (2006) (quotations and citations omitted).  This tort does not prevent legitimate business competition -- rather, the intent element "denotes purposefully improper interference . . . and requires a state of mind or motive more culpable than mere intent." *Id.* (quotations and citations omitted).

Plaintiffs base this claim on the same basic facts as the breach of contract and trade secret misappropriation claims -- that the Individual Defendants contacted WorkflowOne's existing customers to bring them to ASB.  As explained above, however, Plaintiffs' speculative evidence does not suggest that the Individual Defendants breached their agreements or otherwise misappropriated

trade secrets.  The court therefore finds that Plaintiffs have failed to establish a likelihood of success on their tortious interference with business relations claim at this time.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order is DENIED.  As discussed at the July 11, 2014 hearing, Plaintiffs further WITHDRAW the Motion for Preliminary Injunction, without prejudice to refiling.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 11, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*The Standard Register Co. et al. v. Lynden Keala et al.*, Civ. No. 14-00291 JMS-RLP, Order Denying Plaintiffs' Motion for a Temporary Restraining Order

22