IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

<table>
<tr><td>THE STANDARD REGISTER<br>COMPANY, ET AL.,</td><td>)<br>)</td><td>CIV. NO. 14-00291 JMS-RLP</td></tr>
<tr><td></td><td>)</td><td>ORDER DENYING DEFENDANTS'</td></tr>
<tr><td>Plaintiffs,</td><td>)</td><td>MOTIONS FOR SUMMARY</td></tr>
<tr><td></td><td>)</td><td>JUDGMENT, DOC. NOS. 93, 95</td></tr>
<tr><td>vs.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>LYNDEN KEALA, ET AL.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
</table>

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT, DOC. NOS. 93, 95**

**I. INTRODUCTION**

Plaintiffs the Standard Register Company ("Standard Register") and

WorkflowOne LLC (collectively, "Plaintiffs") filed this action against their former

employees Lynden Keala ("Keala"), Jaxcine Kaulili-Guzon ("Kaulili-Guzon"),

and Sharon Brown-Henry ("Brown-Henry") (collectively, the "Individual

Defendants"), as well as against the Individual Defendants' current employer,

American Business Forms, Inc., dba American Solutions for Business ("ASB"),

based on diversity of citizenship under 28 U.S.C. § 1332.[1]

---

[1] The original June 25, 2014 Complaint named Standard Register, Relizon Company ("Relizon") and Workflow Solutions LLC as Plaintiffs. *See* Doc. No. 1, Compl. at 2. The July
(continued...)

Plaintiffs allege that the Individual Defendants violated non-solicitation and/or non-disclosure provisions of their employment agreements when, after leaving to work for Defendant ASB (a business competitor), they solicited and/or accepted business from Plaintiffs' clients and/or disclosed trade secrets. The Amended Complaint makes claims against the Individual Defendants for breach of contract, and against all Defendants for misappropriation of trade secrets and tortious interference with business relations.

Before the court are Motions for Summary Judgment filed by the Individual Defendants and Defendant ASB. Doc. Nos. 93, 95. On May 13, 2015, the court limited the scope of the Motions to whether the relevant provisions of the employment agreements are invalid for lack of sufficient consideration (the "consideration issue"). Doc. No. 105. A hearing was held on May 26, 2015. Based on the following, both Motions are DENIED.

---

[1](...continued)
8, 2014 Amended Complaint names Standard Register and WorkflowOne LLC as Plaintiffs, and alleges that WorkflowOne LLC had previously purchased the assets of Relizon and Workflow Solutions LLC (which had both filed for bankruptcy). Doc. No. 32, Am. Compl. ¶ 2. It further states that Standard Register purchased WorkflowOne LLC, effective August 1, 2013, making Standard Register the sole member and owner of WorkflowOne LLC. *Id.* ¶ 3. And undisputed evidence indicates that Standard Register has formally merged with WorkflowOne LLC, effective December 31, 2014. *See* Doc. No. 100-10, Hermina Glaser Aff. ¶¶ 3, 4. Accordingly, the court proceeds with Standard Register and WorkflowOne LLC as Plaintiffs, although some of the pleadings have retained the original Plaintiffs in the caption.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

**A.     Prior Proceedings**

On July 11, 2014, the court denied Plaintiffs' Motion for Temporary Restraining Order ("TRO"), which had sought to prohibit Defendants from (1) breaching the non-solicitation and non-disclosure provisions of the Individual Defendants' employment agreements; (2) misappropriating WorkflowOne's trade secrets; and (3) tortiously interfering with WorkflowOne's valid business relationships.  Doc. No. 44, Order at 2-3 ("July 11, 2014 Order").  The July 11, 2014 Order sets forth the basic allegations of the dispute, and the court need not reiterate the details regarding the alleged violations.

Rather, the instant Order focuses on the consideration issue -- whether the non-competition provisions of the Individual Defendants' employment agreements are unenforceable for lack of consideration.[2]  *See, e.g.*, *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 534, 135 P.3d 129, 143 (2006) ("It is well-settled that consideration is an essential element of, and is necessary to the enforceability or validity of, a contract.") (quotations omitted).  More

---

[2]  The court accepts, for purposes of addressing the Motions, that the non-competition provisions are otherwise "reasonable."  *See, e.g.*, *7's Enters., Inc. v. Del Rosario*, 111 Haw. 484, 493 & n.15, 143 P.3d 23, 32 & n.15 (2006) (indicating that non-competition covenants will be upheld if "reasonable," and are analyzed on a "case-by-case" basis).  Any other challenges to the scope of the agreements are not presently before the court.

specifically, the question is whether non-competition agreements require

*additional* consideration beyond continued at-will employment before binding

agreements are formed (and if so, whether there is evidence of such consideration

here).  The issue arises if a current employee is required to sign such an agreement

as a condition of continued employment, without any further benefits or

consideration.  (The parties agree that the issue does not arise if a prospective

employee signs such an agreement at the beginning of employment.)

This issue, with both a legal and a factual component, is one that

Plaintiffs had failed to establish previously when attempting to meet the exacting

standards necessary to obtain an "extraordinary" remedy of a TRO.  *See* Doc. No.

44, July 11, 2014 Order at 9 (citing *Winter v. Natural Res. Def. Council, Inc*., 555

U.S. 7, 24 (2008) ("A [TRO] is an extraordinary and drastic remedy never awarded

as of right.") (editorial marks omitted)).  And it was discussed extensively during

the July 11, 2014 hearing, where the parties agreed to consider structuring the

litigation to focus first on the threshold consideration issue.  *See* Doc. No. 53, Tr.

at 28-32.

Consistent with that discussion, on October 18, 2014, Magistrate

Judge Puglisi issued a Rule 16 Scheduling Order (based largely on a stipulation

from the parties) that split the litigation into two phases, with the first phase

focused on the consideration issue. *See* Doc. No. 72, Order at 2-3. The Scheduling Order required substantive Motions regarding the consideration issue to be filed by February 27, 2015 -- as were the two Motions now before the court.[3] Under the Scheduling Order, the second phase proceeds only *after* a decision on the consideration issue. *Id.* at 5. But, despite this aspect of the Scheduling Order, Defendants' Motions seek summary judgment as to many *other* issues as well. Plaintiffs object to the scope of the Motions.

Accordingly, consistent with the Scheduling Order's phased approach, and to avoid any possible prejudice to Plaintiffs because of the Scheduling Order's limitations on discovery, the court limits the instant Order to the consideration issue only. If necessary, Defendants may renew their arguments on other issues in separate Motions at an appropriate time.

## B. The Individual Defendants' Prior Employment With Plaintiffs, and the Non-Competition Provisions

WorkflowOne's business is "providing print, print-related, and promotional marketing solutions, including print and promotional marketing and

---

[3] In pertinent part, the Scheduling Order provides: "If Defendants choose to file a motion regarding the consideration issue before the second phase of discovery, they must do so by February 27, 2015. No additional discovery will be permitted until the Court has resolved the consideration issue." Doc. No. 72, Order ¶ 9.I.A. The court substantially limited discovery to the consideration issue, although some limited discovery was permitted in other areas for purposes of efficiency. *See* Doc. No. 71, Order Granting Defendants' Motion for Sequenced Discovery.

distribution of promotional products."  Doc. No. 32, Am. Compl. ¶ 10.  ASB is a

competitor of WorkflowOne in the same business.  *Id.* ¶ 11.  Each Individual

Defendant now works for ASB, having previously been employed by

WorkflowOne.  *Id.* ¶¶ 12-17.  Keala and Brown-Henry were employed as sales

representatives, and Kaulili-Guzon as a customer service representative.  *Id.* ¶¶ 12,

14, 16.  They began working for ASB in 2014, when ASB opened an office in

Honolulu.  Doc. No. 24-1, Kathryn Hallstrom Decl. ¶ 4.

Each Individual Defendant has a different work history with Relizon,

Workflow Solutions LLC, and/or WorkflowOne.  WorkflowOne was formed as a

"new company" in 2011, having purchased the assets of Relizon and Workflow

Solutions LLC after they filed for bankruptcy in 2010.  Doc. No. 32, Am. Compl.

¶¶ 2-3; Doc. No. 100-8, Pls.' Ex. E.  In conjunction with that purchase, certain

employment agreements were to be assigned to WorkflowOne.[4]

At different points during their employment, the Individual

---

[4]  Defendants contend that the agreements were never assigned to Plaintiffs, rendering
Plaintiffs without standing to enforce them.  But, as set forth below, evidence supports that
WorkflowOne purchased the assets of Relizon and Workflow Solutions LLC, and that
WorkflowOne later merged with Standard Register.  Construing the evidence in favor of
Plaintiffs (the non-moving parties), the court accepts for purposes of these Motions that the
employment contracts entered into with Relizon or Workflow Solutions LLC may be enforced (if
at all) by Plaintiffs.  *See Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th
Cir. 2008) ("[T]he evidence of [the nonmovant] is to be believed, and all justifiable inferences
are to be drawn in his favor." (citations omitted)).

Defendants signed documents agreeing (1) not to disclose the confidential trade secrets of their employer, and (2) for a period of twelve months after their last day of employment, not to solicit business from any customers whom they solicited or accepted business from during the final twelve months of their employment. *See, e.g.*, Doc. Nos. 32-1 to 32-3, Pls.' Exs. A-C. Kaulili-Guzon's and Brown-Henry's agreements include the further restriction that they not only refrain from soliciting, but also refrain from accepting, business from WorkflowOne customers. *See* Doc. Nos. 32-2, -3, Pls.' Exs. B, C. Plaintiffs allege that the Individual Defendants have been violating these provisions on behalf of ASB. Doc. No. 32, Am. Compl. ¶¶ 32-52. The court details each Individual Defendant's work history separately.

### 1. *Lynden Keala*

Keala began working for Vanier Graphics in 1986, and "sometime after that" became employed by Relizon through a series of corporate buyouts. Doc. No. 28-1, Keala Decl. ¶ 1. Keala left Relizon in "about 2000" and then returned for a term of new employment in January of 2005. *Id.* His offer letter from Relizon is dated January 4, 2005, and it indicates a starting date of January 10, 2005. Doc. No. 100-7, Ryan Green Decl. Ex. D. Although the exact date is

unclear, Keala signed a January 10, 2005[5] "Relizon Company Agreement with

Sales Representatives" that includes the following clauses regarding trade secrets:

> 3.  Trade Secret Policy
>
> Employee acknowledges that the business of Relizon
> involves valuable, confidential and proprietary data and
> information of various kinds.  Such data and confidential
> information, called "Relizon Trade Secrets," concern,
> among other things:
>
> (a)    the names and contact information of Relizon's
>        customer and the nature of Relizon's relationships
>        (including types and amount of products acquired
>        from Relizon) with such customers and in addition
>        sales, marketing and product development plans,
>        price lists (non-public), market forecasts and sales
>        volumes;
> . . . .
> 4.  Non-Disclosure.
>
> Employee will not, during or after his or her employment
> with Relizon, use for his or her own benefit or for the

---

[5]  Given the six-day difference between the offer letter and Keala's starting date, the Individual Defendants argue that Keala was already employed with Relizon when he entered into the agreement, pointing to Plaintiffs' admission in discovery that Keala signed it after his employment had "commenced" with Relizon.  Doc. No. 96-8, Individual Defs.' Ex. G at 3.  They also cite Keala's deposition testimony where he indicated he thought his first day with Relizon was January 4, 2005.  Doc. No. 96-15, Individual Defs.' Ex. H at 16.  (The January 10, 2005 agreement bears Keala's signature, but appears have been actually signed on January 1, 2005. Doc. No. 32-1, Pls.' Ex. A at 3).

A reasonable finder of fact, however, could certainly conclude that Keala signed the agreement in conjunction with beginning new employment with Relizon.  And if so, the consideration issue is moot as to Keala.  That is, Keala would not have been required to sign the agreement in exchange for continued employment.  In any event, the court need not resolve this question because the consideration issue is squarely presented with the other two Individual Defendants.

benefit of any other person, or without the prior written consent of Relizon disclose to any person, (other than in the ordinary conduct of Relizon's business) any Relizon Trade secrets. In like manner, Employee will not disclose to or for the benefit of Relizon any trade secrets of any person other than Relizon.

Doc. No. 32-1, Am. Compl. Ex. A at 1. The agreement also provided the following non-solicitation clause:

8. Non Solicitation

Because of and in consideration of, among other things, the extensive knowledge of Relizon Trade Secrets provided to and possessed by Employee during employment with Relizon . . . Employee agrees that, for a period of twelve (12) months after the termination (for any reason) of Employee's employment with Relizon, Employee shall not directly or indirectly . . . solicit business from any Relizon customer or prospective Relizon customer which employee contacted (in writing, by phone or in person) during Employee's final twelve (12) months of employment with Relizon, wherever such customers or prospective customers may be located.

*Id.* at 2.

WorkflowOne's purchase of the assets of Relizon and Workflow Solutions, LLC included purchasing Keala's employment agreement. *See* Doc. No. 100-9, Pls.' Ex. F at 4. Accordingly, on February 22, 2011, WorkflowOne sent a letter to Keala (and other employees) "offer[ing] you employment with WorkflowOne LLC, effective upon the date of the asset transfer under our chapter

9

11 Plan of Reorganization." *Id.* The letter indicated that if Keala accepted he "will become a new employee in the new company." *Id.* The letter also informed Keala that "[i]f you have signed any agreements providing for (among other things) restrictions on soliciting WorkflowOne customers . . . these agreements are being assigned to WorkflowOne LLC and the terms of any such applicable agreement shall continue to apply to you in your employment with WorkflowOne LLC." *Id.* Keala signed it on February 23, 2011. *Id.* at 2.

Keala was "an Account Executive" or "Account Manager" at WorkflowOne. Doc. No. 28-1, Keala Decl. ¶ 8. He resigned from WorkflowOne on January 31, 2014. Doc. No. 96-15, Individual Defs.' Ex. N at 7. He began working as a Sales Associate for ASB on February 11, 2014. *Id.* at 4.

### 2. *Sharon Brown-Henry*

Brown-Henry was employed by WorkflowOne or its related predecessor entities for over twenty five years. Doc. No. 28-3, Brown-Henry Decl. ¶ 1. She began in 1989 with Vanier Graphics, Doc. No. 100-13, Pls.' Ex. J, which, as described above, was a predecessor of Relizon. On July 1, 2009, while she was employed as a sales representative with Relizon, Brown-Henry entered into a "WorkflowOne Agreement with Sales Representative" that contains the following clause:

4.      Non-Piracy

> Because of and in consideration of, among other things,
> the customer relationship and good will developed by
> Employee during employment with WorkflowOne
> [Relizon and Workflow Solutions LLC], as well as
> Employee's extensive access to and development of
> WorkflowOne's confidential information and trade
> secrets, Employee agrees that, for a period of twelve (12)
> months after Employee's last day of employment with
> WorkflowOne (for any reason), Employee shall not,
> directly or indirectly, on behalf of himself or herself or
> any other person or entity:  a) solicit or accept business
> competitive to WorkflowOne from any customer(s) from
> whom Employee solicited or accepted business on behalf
> of WorkflowOne during Employee's final twelve (12)
> months of employment with WorkflowOne, wherever
> such customer(s) may be located[.]

Doc. No. 32-3, Am. Compl. Ex. C at 1.  Brown-Henry attests that, after she signed

the agreement, her job remained the same -- she "did not get a raise, increased

benefits, or any job security," and was not given increased responsibilities or a

promotion.  Doc. No. 28-3, Brown-Henry Decl. ¶ 5.

As with Keala's, Brown-Henry's employment contract was purchased

by WorkflowOne when it acquired the assets of Relizon and Workflow Solutions

LLC.  Doc. No. 100-9, Pls.' Ex. F at 2.  And, as with Keala, on February 22, 2011,

WorkflowOne sent Brown-Henry a letter offering employment with WorkflowOne

that also informed her that "[i]f you have signed any agreements providing for

(among other things) restrictions on soliciting WorkflowOne customers . . . these agreements are being assigned to WorkflowOne LLC and the terms of any such applicable agreement shall continue to apply to you in your employment with WorkflowOne LLC." Doc. No. 100-14, Pls.' Ex. K at 1. Brown-Henry signed the letter on February 23, 2011. *Id.* at 2.

WorkflowOne terminated Brown-Henry's employment, effective January 27, 2014. Doc. No. 28-3, Brown-Henry Decl. ¶ 4. She then began working for ASB as a sales associate in April 2014. Doc. No. 96-4, Individual Defs.' Ex. M at 4.

### 3. *Jaxcine Kaulili-Guzon*

Kaulili-Guzon started working for Plaintiffs in August 2010 as a "customer service representative." Doc. No. 28-2, Kaulili-Guzon Decl. ¶ 1. Her actual duties (and the extent and type of contact she had with Plaintiffs' customers) is disputed. She asserts that her duties were "clerical" such that she "could derive no personal benefit from an increase in sales." Doc. No. 96, Individual Defs.' Concise Statement of Facts ("CSF") ¶ 10. Plaintiffs, however, contend that she had constant contact with customers and pricing information, and engaged in "soliciting and selling" activities. Doc. No. 101, Pls.' Responsive CSF ¶ 10. In any event, on February 22, 2011 (while she was employed with

WorkflowOne), Kaulili-Guzon signed a "WorkflowOne Agreement with Sales-Service Employee" that contains the same "non-piracy" clause (quoted above) that is included in Brown-Henry's sales representative agreement.  *See* Doc. No. 32-2, Am. Compl. Ex. B.

Kaulili-Guzon resigned from WorkflowOne on January 29, 2014. Doc. No. 96-17, Individual Defs.' Ex. P at 18.  She was hired by ASB as "Office Manager and Director of Customer Service, Hawaii," effective February 3, 2014. Doc. No. 24-1, Hallstrom Decl. ¶ 5.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor." (citations omitted)).

## IV. <u>DISCUSSION</u>

The July 11, 2014 Order stated that "numerous courts have held that where an employee has already been hired, continued at-will employment, standing alone, is insufficient consideration for a non-competition agreement. . . [and] the Hawaii Supreme Court has not addressed this precise issue." Doc. No. 44, July 11, 2014 Order at 11; *Standard Register Co. v. Keala*, 2014 WL 3420785, at *4 (D. Haw. July 11, 2014) (citing cases). Embracing that reasoning, Defendants argue that the court should grant summary judgment in their favor, concluding that the non-competition provisions are unenforceable.

But we are no longer at a TRO-stage of the litigation. The court and the parties are now in a position to examine the consideration issue much more closely. Indeed, such was the purpose of breaking the litigation into phases. As discussed during the July 11, 2014 hearing, the court and the parties were well-aware that this unsettled Hawaii legal question would likely arise again in subsequent substantive motions. *See, e.g.*, Doc. No. 53, Tr. (July 11, 2014) at 7 ("The problem I have is there are a number of states that say that [continued employment is] not enough . . . . so I'm trying to get a feel for where Hawaii might be in that and what the majority/minority rule is, if there is a

majority/minority [rule]." *Id.* at 9 ("[T]he reality is in a TRO setting the burden is on the plaintiff to come forward and convince me in the short time available not only that the facts support you but [also that] there's . . . legal authority sufficient for me to rule in the manner in which you seek my ruling. And I'm not sure with these two [employees] that I have that level of comfort."). The court proceeds from this perspective.

## A.    Hawaii Law Applies

Initially, although not specifically raised in the Motions, the court addresses whether to apply Hawaii or Ohio law because the employment agreements all contain choice-of-law clauses unambiguously choosing Ohio law. *See* Doc. No. 32-1, Am. Compl. Ex. A ¶ 13; Doc. No. 32-2, Am. Compl. Ex. B ¶ 10; Doc. No. 32-3, Am. Compl. Ex. C ¶ 10.

A federal court, sitting in diversity jurisdiction, applies the forum state's choice-of-law principles in determining which substantive law applies to an interpretation of a contract. *See Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007). Under Hawaii law, courts "look[] to the state with the most significant relationship to the parties and subject matter" in a choice-of-law analysis. *Mikelson v. United Servs. Auto. Ass'n*, 107 Haw. 192, 198, 111 P.3d 601, 607 (2005). And Hawaii courts are "guided by" the Restatement (Second) of

16

Conflict of Laws § 187 (1971), in determining which law to apply where a contract contains an explicit choice-of-law clause. *See, e.g.*, *Ingalls v. Gov't Emps. Ins. Co.*, 903 F. Supp. 2d 1049, 1055 (D. Haw. 2012).[6]

Although Plaintiffs are Ohio corporate entities, Plaintiffs previously argued to the court during TRO proceedings (and Defendants did not dispute) that Hawaii law applies to all aspects of this dispute. *See* Doc. No. 19, Pls.' Suppl. Br. at 2-6. Plaintiffs acknowledged that the Individual Defendants are all Hawaii residents who worked for WorkflowOne in Hawaii, and who allegedly solicited (or received business from) Plaintiffs' customers in Hawaii after the Individual Defendants moved to ASB in Hawaii. *Id.* Further, Plaintiffs recognize that none of the Defendants has little if any contacts with Ohio. Given these undisputed

---

[6] The Restatement (Second) Conflict of Laws § 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

facts, the court agrees that Hawaii has the most significant relationship to the events of this case.

Accordingly, despite the Ohio choice-of-law clauses (and given Plaintiffs' recognition that these choice-of-law clause should not apply to the dispute), the court applies Hawaii law. *See, e.g.*, *Ingalls*, 903 F. Supp. 2d at 1055 (concluding that Hawaii law applies, despite a California choice-of-law clause in an insurance contract, because Hawaii has the most significant relationship to the case).[7]

## B. Applying the Majority Rule, Continuing At-Will Employment is Sufficient Consideration to Enforce the Non-Competition Provisions

The court turns to the precise issue -- whether continuing at-will employment is, by itself, sufficient consideration for an otherwise reasonable non-competition agreement entered into during a term of employment (and not at the beginning of employment). As the July 14, 2014 Order established, this is an open issue in Hawaii law. The parties have not cited, and the court's independent research has not found, any Hawaii authority addressing this precise question.

_____

[7] Whether a non-competition agreement has sufficient consideration, although an important question of contract law, is not a "fundamental policy" of a state for purposes of a choice-of-law analysis. *See* Restatement (Second) Conflict of Laws § 187 cmt. g (explaining that "[t]o be 'fundamental,' a policy must in any event be a substantial one. . . . Nor is such policy likely to be represented by . . . general rules of contract law, such as those concerned with the need for consideration[.]").

"In the absence of controlling state law, a 'federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case.'" *Apana v. TIG Ins. Co.*, 504 F. Supp. 2d 998, 1003 (D. Haw. 2007) (quoting *Tirona v. State Farm Mut. Auto. Ins. Co.*, 812 F. Supp. 1083, 1085 (D. Haw. 1993) (citations omitted)). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) (quoting *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)).

Outside of Hawaii, authorities are split. As the July 14, 2014 Order recognized, courts in several jurisdictions have held that continued at-will employment, standing alone, is insufficient consideration for a non-competition agreement entered into during current employment. *See, e.g.*, *Poole v. Incentives Unlimited, Inc.*, 548 S.E.2d 207, 209 (S.C. 2001) (adopting "the rule that when a covenant is entered into after the inception of employment, separate consideration, in addition to continued at-will employment, is necessary in order for the covenant to be enforceable"); *Labriola v. Pollard Grp., Inc.*, 100 P.3d 791, 794 (Wash. 2004) ("A noncompete agreement entered into after employment will be enforced if it is supported by independent consideration. . . . Independent consideration

involves new promises or obligations previously not required of the parties.");

*Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164 (Minn. App. 1993) ("Proof of continued employment is not enough to show sufficient consideration for a noncompetition agreement.").

These authorities generally reason that current employees do not have equal bargaining power, and that -- absent some additional benefits such as a change in pay, new duties, or access to new information -- continued employment is illusory and an insufficient exchange for the new obligations. *See, e.g.*, *Poole*, 548 S.E.2d at 209; *Labriola*, 100 P.3d at 794-95; *Currie*, 500 N.W.2d at 164.

Nevertheless, the clear majority position is to the contrary -- an offer of continued at-will employment is, by itself, sufficient consideration for a non-competition agreement.  This position is set forth the Restatement of Employment Law § 8.06 (Proposed Final Draft, April 18, 2014) ("Restatement"),[8] which concerns the enforcement of restrictive covenants in employment agreements.[9]

---

[8]  This final version of the Restatement, adopted by the American Law Institute in 2014, is "in the final stages of editing," and is due for publication in "early 2015."  *See* Current Projects (Restatement of the Law, Employment Law), www.ali.org (last accessed June 5, 2015).  It "may be cited as representing the Institute's position until the official text is published."  Publications Catalog (Restatement of the Law, Employment Law), www.ali.org (last accessed June 5, 2015).

[9]  Section 8.06 provides:
> Except to the extent other law or applicable professional rules are to the contrary, a covenant in an agreement between an employer and former employee restricting a former employee's

(continued...)

The official comment to that section explains that "[c]ontinuing employment of an at-will employee is generally sufficient consideration to support the enforcement of an otherwise valid restrictive covenant." *Id.*, cmt. e & illus. 12. The comment recognizes that "[a] significant minority of jurisdictions require 'new' or 'additional' consideration." *Id.* at 458.

The Reporters' Note to comment e explains that "[i]n most states, a promise of continued indefinite employment is sufficient consideration for a restrictive covenant that the employee signs after the inception of the employment arrangement." *Id*. at 467 (citing cases from Alabama, Arkansas, California, Delaware, Florida, Idaho, Indiana, Iowa, Kansas, Louisiana, Michigan, Mississippi, Missouri, Nevada, New Hampshire, New Mexico, New Jersey, Ohio, Rhode Island, South Dakota, Utah, Vermont, and Wisconsin). It further describes

---

[9](...continued)
working activities is enforceable only if it is reasonably tailored in scope, geography, and time to further a protectable interest of the employer, as defined in § 8.07, unless:

(a) the employer discharges the employee on a basis that makes enforcement of the covenant inequitable;

(b) the employer acted in bad faith in requiring or invoking the covenant;

(c) the employer materially breached the underlying employment agreement; or

(d) in the geographic region covered by the restriction a great public need for the special skills and services of the former employee outweighs any legitimate interest of the employer in enforcing the covenant.

a type of "middle-ground" position, where "[i]n a few states, courts recognize the promise of continued employment as sufficient consideration, but only where the employer actually retains the employee for a substantial period of time after covenant formation." *Id*. at 469 (citing cases from Arizona, Illinois, Maine, Maryland, Nebraska, New York, Oregon, and Tennessee).[10]

And it recognizes the Individual Defendants' position that "[i]n a significant minority of states, the courts hold that in order to be valid and enforceable, a noncompetion covenant executed after the commencement of employment must be supported by new consideration." *Id*. at 470 (citing cases from Connecticut, Minnesota, Montana, North Carolina, Pennsylvania, South Carolina, Washington, West Virginia, and Wyoming). (It describes some uncertainty in Massachusetts and Texas. *Id*. at 470-71).

By the Restatement's count, then, over thirty jurisdictions have indicated that continued employment alone, or for an appreciable period of time

---

[10] The Reporters' Note criticizes this "middle ground" approach, commenting: These courts, although often reaching the correct result, appear confused as to the appropriate rationale. The length of time between the execution of the covenant and the end of the employment relationship may be relevant to whether the employer was acting in good faith in securing the covenant, but is inconsistent with the general contracts rule that courts do not measure the adequacy of consideration.
Restatement § 8.06, Reporters' Note at 469-70.

after an agreement, constitutes sufficient consideration to render enforceable an otherwise reasonable non-competition covenant entered into during a term of employment.  In contrast, approximately nine jurisdictions require some additional consideration to a current employee before such a non-competition agreement is enforceable.

The majority position relies on several different rationales for holding that continued at-will employment is sufficient.  For example, *Runzheimer International, Ltd. v. Friedlen*, 862 N.W.2d 879 (Wisc. 2015), recently embraced the majority position, reasoning that an employer's forbearance (a promise not to terminate an employee) in exchange for a restrictive covenant constitutes lawful consideration for such a covenant.  *Id.* at 862.  Other jurisdictions follow the same rationale.  *See, e.g.*, *Lake Land Emp't Grp. v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004) ("Consideration may consist of either a detriment to the promisee or a benefit to the promisor.  A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee."); *Summits 7, Inc. v. Kelly*, 886 A.2d 365, 373 (Vt. 2005) ("[T]he consideration is the employer's forbearance from terminating the at-will employment relationship.").

Like the Restatement, *Runzheimer* noted that "jurisdictions that hold

that a promise not to fire is *not* lawful consideration for a covenant not to compete

represent the 'distinct minority.'" 862 N.W.2d at 888 (citing *Simko, Inc. v.*

*Graymar Co.*, 464 A.2d 1104, 1107 (Md. App. 1983)).  In contrast, because

"forebearance in exercising a legal right is valid consideration," *Runzheimer*

recognized that continued at-will employment is not worthless or illusory.  *Id.*

And an employer's interest is legitimate:

> One way an employer may respond to changing
> economic conditions is to reduce the risk that former
> employees will compete and take business from the
> company.  Many employers require employees to sign
> restrictive covenants to ameliorate this risk.  Restrictive
> covenants are enforceable in Wisconsin as long as the
> restrictions are reasonable.

*Id.* at 889.

Given that such covenants are generally enforceable if entered at the

*beginning* of employment, *Runzheimer* also adopted a practical approach -- "[i]f

we were to hold that consideration beyond continued employment is necessary in

cases like this, an employer might simply fire an existing at-will employee and

then re-hire the employee the next day with a covenant not to compete."  *Id.* at 890

(citing *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994)).  Likewise,

other jurisdictions follow the same rationale.  *See, e.g.*, *Summits 7, Inc.*, 886 A.2d

at 373 ("[T]he only effect of drawing a distinction between pre-hire and post-hire

covenants would be to induce employers . . . to fire those employees and rehire them the following day with a fresh covenant not to compete.") (quoting *Suess*); *Camco, Inc. v. Baker*, 936 P.2d 829, 832 (Nev. 1997) ("A contrary holding might leave the employer in a position of having to fire an at-will employee and then rehire that same employee with the restrictive covenant in place, or have the covenant held unenforceable for want of consideration.") (citation omitted).

*Summits 7, Inc.* reasons:

> it is not logical for a court to treat differently a covenant presented on the first day of work and one presented one week after the first day in the at-will employment setting. While the contemporaneous nature of the exchange differs, both employees will be faced with the threat of not having a job if they choose not to sign.

886 A.2d at 373 (quoting T. Staidl, *The Enforceability of Noncompetition Agreements When Employment is At-Will: Reformulating the Analysis*, 2 Employee Rights & Emp. Pol'y J. 95, 103 (1998)).

 *Runzheimer* also relied on the principle that courts do not generally inquire into the adequacy of consideration:

> [A] valuable consideration however small is sufficient to support any contract; . . . inadequacy of consideration alone is not a fatal defect. The law concerns itself only with the existence of legal consideration because the adequacy in fact, as distinguished from value in law, is for the parties to judge for themselves. A consideration

> of even an indeterminate value, incapable of being
> reduced to a fixed sum, can be sufficient to constitute
> legal consideration.

862 N.W.2d at 891 (quoting *St. Norbert Coll. Found., Inc. v. McCormick*, 260

N.W.2d 776, 780 (Wisc. 1978) (internal citations omitted)).  Other jurisdictions

also rely on this fundamental concept.  *See, e.g.*, *Columber*, 804 N.E.2d at 32-33

("We concur in the view that in cases involving noncompetition agreements, as in

other cases, it is still believed to be good policy to let people make their own

bargains and their own valuations.") (citation and quotation marks omitted);

*Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011) (en

banc) (adopting majority rule, reasoning in part that "[e]xcept in extreme

circumstances, such as those involving allegations of unconscionability, a court

should not judge or attempt to assess the adequacy of the consideration . . . .  [W]e

need only find some consideration, regardless of its relative value, to support a

covenant not to compete") (citations omitted); *Oh v. Wilson*, 910 P.2d 276, 279

(Nev. 1996) ("According to the Restatement [(Second) of Contracts], courts do not

generally inquire into the adequacy of consideration because the values exchanged

are often difficult to measure and the parties are thought to be better at evaluating

the circumstances of particular transactions.").

Having reviewed this legal landscape, the court concludes that the

Hawaii Supreme Court would not require additional consideration beyond continuing at-will employment for the restrictive covenants at issue here. That is, the court follows the majority rule -- the court is persuaded by the justifications set forth above. Indeed, although this is an open issue in Hawaii law, this conclusion is grounded in existing Hawaii law.

First, Hawaii generally follows the forthcoming Restatement § 8.06's position regarding the enforceability of non-competition provisions -- a Hawaii court examines postemployment restrictive covenants for reasonableness, including factors such as geographical scope, length of time, and breadth of the restriction. *See Technicolor, Inc. v. Traeger*, 57 Haw. 113, 120-22, 551 P.2d 163, 169-70 (1976); *see also Del Rosario*, 111 Haw. at 492, 143 P.3d at 31.[11] Nothing in Hawaii caselaw indicates it would not also follow other aspects of that model rule.[12]

---

[11] *Traeger* cited to Tennessee authority for a statement of the law on restrictive covenants and a reasonableness test. *See* 57 Haw. at 120, 551 P.2d at 169 (citing *Ramsey v. Mut. Supply Co.*, 427 S.W.2d 849 (Tenn. App. 1968)). And Tennessee allows continuing employment to be sufficient consideration, where such employment continues for a substantial period of time. *See Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 35 (Tenn. 1984).

[12] The Individual Defendants argue that Hawaii disfavors restrictive covenants, pointing to 2015 legislation disallowing restrictive covenants in technology contacts. *See* H.B. 1090 (2015) (prohibiting noncompete agreements and restrictive covenants that forbid post-employment competition for employees of certain technology businesses) (awaiting Governor's signature). But even if Hawaii specifically prohibits certain non-competition provisions in a particular industry, this does not mean additional consideration is required for

(continued...)

Second, Hawaii defines consideration the same as other states that follow the majority rule -- forbearance is sufficient consideration. *See Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Haw. 286, 298-99, 141 P.3d 459, 471-72 (2006) ("It is well established that '[f]orbearance to exercise a right is good consideration for a promise.'") (quoting *Shannon v. Waterhouse*, 58 Haw. 4, 6, 563 P.2d 391, 393 (1977); *see also Young v. Allstate Ins. Co.*, 119 Haw. 403, 427-28, 198 P.3d 666, 690-01 (2008) ("Consideration is defined as a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment. . . . [P]erformance may consist of (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation.") (citations omitted).

Third, adopting the forthcoming Restatement's position is consistent with Hawaii's practice in other unsettled areas of the law. *See, e.g.*, *Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 488 F. Supp. 2d 1071, 1076 (D. Haw. 2006) ("Hawaii courts have considered and adopted various sections of the Restatement (Second) of Torts on numerous occasions. Similarly, Hawaii courts

---

[12](...continued)

non-competition provisions for current employees in other areas (there is no suggestion that the Individual Defendants are "technology" workers for purposes of H.B. 1090). Under *Traeger*, courts still analyze restrictive covenants for reasonableness. And by limiting such a restriction on non-competition provisions as to technology workers, the Bill suggests that agreements are otherwise valid (again, if they are reasonable in scope, geography, and time).

frequently adopt and apply sections of the Restatement (Second) of Agency.")
(many internal citations omitted).  It is true, of course, that Hawaii does not blindly
follow majority rules in all areas of the law.  Here, however, where the court is
convinced that the justifications for the sufficiency of continued at-will
employment are consistent with Hawaii principles, the court will apply the
majority position.

In sum, any lack of "additional" consideration beyond continued at-
will employment is not a basis for granting summary judgment as to Plaintiffs'
claims against the Individual Defendants.  Plaintiffs' breach of contract claims
against the Individual Defendants remain.  And it follows that a lack of
consideration is no basis to dismiss Plaintiffs' other claims (misappropriation of
trade secrets, and tortious interference with Plaintiffs' business relationships)
against all Defendants -- claims which might otherwise fail if the non-competition
provisions were unenforceable.

## V.  <u>CONCLUSION</u>

Defendants' Motions for Summary Judgment, Doc. Nos. 93 & 95, as
to the consideration issue are DENIED.  Any other aspects of the Motions, if
appropriate, may be raised in subsequent motions after sufficient discovery is
completed in compliance with the previous Scheduling Order.

As discussed at the May 26, 2015 hearing, within two weeks, Plaintiffs are to notify the Court and the Defendants regarding their position as to further injunctive relief (given that the covenants at issue appear to be restricted to one year after an individual leaves WorkflowOne). The parties are also directed to contact Magistrate Judge Puglisi to establish new dates and deadlines for the remaining aspects of the litigation.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 8, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Standard Register et al. v. Keala, et al.*, Civ. No. 14-00291 JMS-RLP, Order Denying Motions for Summary Judgment, Doc. Nos. 93, 95